**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 09-cv-03011-CMA-KLM

VICKI LYNN TRUJILLO, individually and on behalf of the Estate of Jason Gomez,

    Plaintiff,

v.

TIMOTHY CAMPBELL, individually and as a Police Officer of the
   City and County of Denver,
GERALD R. WHITMAN, individually and in his official capacity as
   Chief of Police of the City and County of Denver, and
THE CITY AND COUNTY OF DENVER, a municipal corporation,

    Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Defendants Timothy Campbell, Gerald R. Whitman, and the City and County of Denver (collectively, "Defendants") Motion and Brief for Summary Judgment, filed on December 19, 2011. (Doc. # 121.) For the reasons discussed below, the Court grants in part and denies in part Defendants' motion for summary judgment.

## I. BACKGROUND

The following facts are undisputed, unless otherwise noted. The Court will elaborate, as needed, in its analysis section.

In the early morning hours of December 19, 2007, Officer Campbell, a member of the Denver Police Department ("DPD"), was patrolling a residential area in Denver, Colorado. (Doc. # 121 at ¶ 4.) Just before 2:10 a.m., Officer Campbell observed a

"dark colored four-door Saturn" driving in the opposite direction of his patrol car on Irving Street. (*Id.* at ¶¶ 4-5.) Officer Campbell decided to follow the Saturn, allegedly because he found it "suspicious." (*Id.* at ¶ 6-7.) As Officer Campbell trailed behind the Saturn, the Saturn turned east on Ohio Street and out of Officer Campbell's sight. Following onto Ohio Street, Officer Campbell spotted the Saturn stopped in the driveway of the first house on his right. (*Id.* at ¶ 12.) When Officer Campbell exited his patrol vehicle, he observed Jason Gomez "rapidly exit the car" and "immediately run away from the car through the residential neighborhood." (*Id.*) Officer Campbell gave chase on foot, eventually catching up to Mr. Gomez. An altercation ensued that culminated with Officer Campbell fatally shooting Gomez.

Besides agreeing that Officer Campbell shot Mr. Gomez, the parties dispute virtually every other fact concerning the shooting. Officer Campbell attests that Mr. Gomez shouted that he was "gonna kill" Officer Campbell and shouted the initials of a violent street gang. Officer Campbell also attests that Mr. Gomez, who was "bobbing like a fighting cock," reached into his pocket and pulled out an object with a shiny tip, and rapidly moved his left hand with the object behind his back out of Officer Campbell's sight. (*See* Doc. # 121-1 at ¶¶ 14-19.) Although Mr. Gomez is unable to tell his side of the story, an eyewitness to the shooting, Max Alderton, tells a very different tale. Mr. Alderton attests that Mr. Gomez was kneeling down in front of Officer Campbell, that Officer Campbell shouted that he was going to kill Mr. Gomez, that Mr. Gomez did not make any threatening gestures, and that he did not see any object in Mr. Gomez's hand. Mr. Gomez tried to flee, and Officer Campbell shot him. After Mr. Gomez fell to the ground, Officer Campbell fired five to seven more shots.

Plaintiff initiated this lawsuit on December 29, 2009. (Doc. # 3.) Pursuant to her Complaint, Plaintiff Vicki Lynn Trjiullo ("Plaintiff"), individually and on behalf of the Estate of Jason Gomez ("Gomez"), brings three claims for relief. First, she brings an excessive force claim under 42 U.S.C. § 1983 against Defendant Campbell ("Officer Campbell") and Defendant City and County of Denver ("Denver"). Second, she brings a § 1983 municipal liability claim against Defendant Whitman ("Chief Whitman") and Denver. Third, she brings a § 1985 conspiracy claim against all Defendants.[1] (Doc. # 3.)

Plaintiff responded to Defendants' motion for summary judgment on February 29, 2012,[2] and Defendants replied on May 14, 2012. (Doc. ## 142, 169.)

## II. STANDARD OF REVIEW

### A. SUMMARY JUDGMENT

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the

---

[1] Plaintiff's Complaint also appears to allege a claim of the deprivation of familial association. (Doc. # 3 at 5.) In her Response, Plaintiff admits that this claim is not supported by the facts, and Plaintiff has therefore withdrawn this claim.

[2] On February 29, 2012, the Court granted Plaintiff's Motion for Leave to File Excess Pages. (Doc. # 143.) When the Court permits a party to exceed its page limit requirements, the Court expects that the party will do its utmost to conform as closely as possible to the page limits. Plaintiff, however, filed an 83-page response brief, which exceeds the Court's page limits by a robust 63 pages. CMA Civ. Practice Standards III.G.2 ("Motions and response briefs shall not exceed **twenty** pages) (emphasis in original). As if this were not long enough, Plaintiff then filed an 8-page supplement. (Doc. # 157.) Plaintiff's decision to file a 91-page response to Defendants' 30-page motion for summary judgment is an abuse of the Court's willingness to permit Plaintiff to exceed the page limits. The excessive length of Plaintiff's Response is especially frustrating because, as Defendants observe, the Response is both "prolix and rambling." (Doc. # 169 at 15 n.3.)

nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670-71. In attempting to meet that standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III. ANALYSIS

**A.     EXCESSIVE FORCE CLAIM AGAINST DEFENDANT CAMPBELL**

Defendants argue that Officer Campbell is entitled to qualified immunity.  Under the doctrine of qualified immunity, government officials are protected "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) (internal quotation marks omitted)).

"Qualified immunity requires a 'two-step sequence.'"  *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012) (quoting *Pearson*, 555 U.S. 223).  "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established."  *Id.* (quoting *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).  Only if a plaintiff can satisfy both steps will the assertion of qualified immunity be defeated.  *See id.*

In this case, Plaintiff asserts that Officer Campbell violated Mr. Gomez's Fourth Amendment rights to be free from unlawful seizure through the use of deadly force. (Doc. # 142 at 24.)  "Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment."  *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989).  Under this objective standard, the question is whether Officer Campbell's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation.  *See Morris*, 672 F.3d at 1195 (citing *Graham*, 490 U.S. at 397).  In determining whether the use of force was reasonable, the

Court must pay careful attention to the facts and circumstances in this particular situation, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396).

In this case, there are numerous facts in dispute.[3] Viewing the disputed evidence in the light most favorable to Plaintiff, Officer Campbell was shouting that he was going to kill Mr. Gomez as Mr. Gomez knelt before Officer Campbell. When Mr. Gomez turned to flee, Officer Campbell fired one shot at Mr. Gomez who fell to the ground. After a brief pause, Officer Campbell fired five to seven more shots at Mr. Gomez. Mr. Alderton did not see Mr. Gomez make any threatening gestures during the exchange and did not see Mr. Gomez have anything in his hand. (Doc. # 142-5 at ¶¶ 6-12.)

Based on these facts, the Court finds that all three of the *Graham* factors weigh heavily in Plaintiff's favor. Under the first factor, the Court considers the severity of the crime at issue. Here, there was no crime at issue. Officer Campbell attests only that he was "suspicious that [Mr. Gomez] was involved in criminal activity." (Doc. # 121-1 at ¶ 10.) It appears undisputed that Officer Campbell did not have reason to suspect Mr. Gomez of committing any specific crime. The second factor – whether the suspect

---

[3] Defendants argue that "the statements of partial witness Alderton and the testimony of Defendant Campbell are consistent." (Doc. # 169 at 17.) This is ludicrous. For example, Officer Campbell attests that Mr. Gomez yelled "I'm gonna kill you" as he made a threatening gesture. (Doc. # 121-1 at ¶ 17.) Defendants say in their brief that "Alderton stated he does not know who was shouting 'I'm gonna fucking kill you.'" (Doc. # 169 at 17.) However, in both his statement to the Denver Police Department and in his affidavit, Mr. Alderton asserts that Officer Campbell was the one yelling, "I am gonna fucking kill you!" (Doc. # 142-5; 142-1.) Defendants' distortion of the evidentiary record is, at best, an example of inexcusable carelessness; at worst, a blatant attempt to deceive this Court.

poses an immediate threat to the safety of the officer or others – also weighs strongly in Plaintiff's favor. No reasonable officer would have reason to believe that a fleeing person not suspected of any specific crime and who had not made any threatening gestures posed any danger. At first blush, the third factor – whether Mr. Gomez was actively resisting arrest or attempting to flee – appears to tilt in Defendants' favor as Mr. Gomez was attempting to flee when he was shot. However, viewing the evidence in the light most favorable to Plaintiff, Mr. Gomez's attempt to flee was the result of Officer Campbell's own deliberate or reckless conduct when he threatened to kill Mr. Gomez. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 840 (10th Cir. 1997) (noting that the reasonableness of an officer's conduct may depend on whether the officer's own deliberate or reckless conduct created the need to use deadly force). Thus, Plaintiff has presented sufficient evidence to raise triable issues that Officer Campbell violated Mr. Gomez's Fourth Amendment rights.

Having determined that Plaintiff may be able to prove a Fourth Amendment violation, the Court turns to the second qualified immunity prong. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The question of whether a right is clearly established must be addressed in light of the specific context of the case. *See id.* That is, the question is not whether there exists a general right to be free from excessive force, but whether Mr. Gomez had a clearly established right under the facts of this case. *See Morris*, 672 F.3d at 1196. Viewing the disputed evidence in the light most favorable to Plaintiff, there can be no serious doubt that Officer Campbell's alleged

7

conduct violated clearly established rights. The Supreme Court has held that "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). In other words, "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Id.*; *accord Carr v. Castle*, 337 F.3d 1221, 1227 (10th Cir. 2003). Thus, Supreme Court and Tenth Circuit precedent clearly establishes that a police officer may not use deadly force to seize an unarmed and nondangerous suspect who flees from a police officer.

Construing the disputed evidence in the light most favorable to Plaintiff, the Court finds that Officer Campbell violated Mr. Gomez' clearly established rights under the Fourth Amendment. Thus, Officer Campbell is not entitled to qualified immunity and judgment is not appropriate as a matter of law. Whether Officer Campbell actually violated Mr. Gomez's Fourth Amendment rights is a matter to be determined at trial.

**B.     MUNICIPAL LIABLITY CLAIM PURSUANT TO 42 U.S.C. § 1983**

A municipality may not be held liable under § 1983 merely on the basis of its status as an employer. Rather, to establish municipal liability, a plaintiff must demonstrate two elements: (1) a municipal employee committed a constitutional violation; and (2) a direct causal link between the injury alleged and a municipal policy or custom. *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010). For purposes of the instant summary judgment motion, the Court has already found that Plaintiff has provided sufficient evidence to create triable issues on the question of whether Officer Campbell violated Mr. Gomez's Fourth Amendment rights. Thus, the

issue is whether Plaintiff can show a direct causal link between Denver's policies or customs and the constitutional injury.

Plaintiff's response to Defendants' motion for summary judgment identifies the following theories for municipality liability under § 1983: (1) failure to train of supervise police officers properly on the use of force including deadly force; (2) failure to discipline officers who use deadly force; (3) failure to properly supervise Officer Campbell and other Denver Police Officers; and (4) failure to properly investigate police shootings.[4] (Doc. # 142 at 44.) The Court examines each in turn.

1. Failure to Train

Plaintiff first theory for municipality under § 1983 is her allegation that Denver failed to adequately train its police officers. To establish a claim for failure to train, Plaintiff must first prove that the training was, in fact, inadequate. If Plaintiff can do so, she must then satisfy the following requirements:

> (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000) (quoting *Allen v. Muskogee*, 119 F.3d 837, 841-42 (10th Cir. 1997)).

---

[4] The Court notes that Plaintiff has not complied with the Court's practice standards, which instructs parties opposing summary judgment to include a separate section of her brief in order to "set forth in simple declarative sentences . . .each additional material disputed fact which undercuts movant's claim that movant is entitled to judgment as a matter of law." CMA Civ. Practice Standards III.G.6. With one exception, Plaintiff utterly disregards this instruction and provides no facts relating to her municipal liability claim (the one exception being that Plaintiff has identified the average percentage of sustained complaints against Denver police officers from 1994 to 2007). (Doc. # 142 at 23.)

Plaintiff's first argument as to Denver's alleged inadequate training regards her allegation that the DPD is not accredited by the Commission on Accreditation for Law Enforcement Agencies ("CALEA").[5]  (Doc. # 142 at 47.)  According to Plaintiff, CALEA requires police departments to provide mandatory periodic re-training to its officers on use of force policy and law.  (*Id.*)  Plaintiff argues that because the DPD is not a CALEA accredited police department, it therefore fails to provide its officers such training.  This is a logical fallacy.  The fact that the DPD is not a CALEA accredited police department is not evidence that the DPD fails to provide adequate training to its officers.[6]

Plaintiff also claims that the DPD's training materials "distort[ ] the perception of police officers and creates a mindset that they believe that they are going to be killed or ambushed at any moment."  (Doc. # 142 at 53.)  Plaintiff also criticizes the training materials for failing to indicate that "law enforcement work is not as dangerous as many other occupations."  Although common sense makes it difficult to accept Plaintiff's contentions about the dangerousness of law enforcement work, Plaintiff has, perhaps,

---

[5] Although Plaintiff does not cite to any evidence showing that the DPD is not accredited by the CALEA, Defendants' reply seems to admit this fact.  (Doc. # 169 at 26.)  However, as Defendants note, Plaintiff fails to explain the relevance of this non-accreditation.  Although there are allegedly 389 police departments that are CALEA accredited, there are nearly 17,000 law enforcement agencies across the United States.

[6] Plaintiff cites to *Zuchel v. City & County of Denver*, in which the Tenth Circuit concluded that the DPD's failure to provide periodic live decisional shooting training constituted sufficient evidence of deliberate indifference.  *See* 997 F.2d 730, 740-41 (10th Cir. 1993).  Plaintiff contends that the *Zuchel* decision put Denver on notice that it needed to provide periodic training.  Although constructive notice could be imputed from *Zuchel*, there is no evidence in the record that the DPD has failed to provide periodic training.

raised triable issues on the question of whether the City's training distorts the dangerousness of the job.[7]

Nevertheless, Plaintiff cannot survive summary judgment on her failure to train claim because she has provided no evidence of deliberate indifference on the part of Denver with respect to the training materials. To show deliberate indifference, Plaintiff must present facts showing that "the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Bryson*, 627 F.3d at 789 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)). In the specific context of inadequate training, deliberate indifference is shown when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Carr v. Castel*, 337 F.3d 1221, 1229 (10th Cir. 2003). The Court finds that Plaintiff has not presented facts sufficient to meet this demanding standard. No reasonable juror could conclude that Denver had notice that either the few isolated poems and cartoons or the omissions of statistics regarding the fatality rate for police officers made it "substantially certain" that its officers would

---

[7] Plaintiff also argues that the Denver Police Department training materials erroneously instruct police officers that they may use deadly force upon their own subjective beliefs. Plaintiff has provided the Court with no evidence to support this argument. Although Plaintiff quotes from the DPD Operations Manual, Plaintiff has not attached the relevant sections to her motion so the Court cannot determine whether Plaintiff's quotations are accurate or taken in context. This is a recurring problem in Plaintiff's Response. For future cases, the Court reminds Plaintiff's counsel that the non-moving party must "set forth specific facts that would be admissible in evidence in the event of trial." Adler, 144 F.3d at 671. To accomplish this, such facts must be identified by reference to **affidavits, deposition transcripts, or specific exhibits** incorporated therein." *Id.* (emphasis added).

engage in an unlawful use of deadly force.[8]  *Lobato v. Ford*, Case No. 05-cv-01437. Doc. # 266 at 17, (D. Colo. Oct. 31, 2007) (unpublished) (rejecting virtually identical claim on grounds that Plaintiff had failed to show that Denver was deliberately indifferent).

        2.      <u>Failure to Discipline</u>

Plaintiff's second theory of municipal liability is her allegation that Denver has an unwritten policy or custom of failing to discipline its police officers for excessive force violations.  Plaintiff must show genuine disputes of material fact that Denver had in place (1) a custom or policy of failure to discipline; (2) deliberate indifference on the part of a policy maker, and (3) a causal link to the constitutional deprivation.  *See Gates v. Unified Sch. Dist. No. 449 of Leavenworth Ctny., Kan.*, 996 F.2d 1035, 1041 (10th Cir. 1993).

To support her § 1983 claim based on Denver's alleged failure to discipline its officers for the use of excessive force, Plaintiff highlights the fact that from 1994 to 2007, DPD officials sustained only 1.16% of excessive use of force complaints brought against its officers  (Doc. # 142-24.)  According to Louis A. Mayo, Ph.D., Plaintiff's expert on police policies and practices, the national average for sustained rates for use of force complaints for large state and local law enforcement agencies is approximately 8%.  (Doc. # 142-8 at ¶ 25.)  Dr. Mayo opines that the "extremely low sustained rate for excessive force complaints by the DPD demonstrates that the Department is

---

[8] Moreover, as Defendants point out, Plaintiff has provided no evidence indicating how these materials are actually used in training.

deliberately indifferent to complaints of excessive force and condones the use of excessive force by its officers." (*Id.*)

In *Lobato*, another court in this district concluded that similar statistical evidence, standing alone, was sufficient to create a triable issue as to the existence of such a policy.[9]  *See* Case No. 05-cv-01437, Doc. # 266 at 20.  However, the Court finds that the statistical evidence presented by Plaintiff is too generalized for a reasonable jury to infer a custom of policy from it.  First, Plaintiff's statistical evidence does not specify what proportion of the excessive force complaints were deadly force complaints.[10]  Second, Dr. Mayo does not explain how he reached his opinion that the DPD was "deliberately indifferent" based only on the small number of sustained complaints.  There is no evidence that the allegations of excessive force in any other case were similar to the instant case.  *See Merman v. City of Camden*, 824 F. Supp. 2d 581, 591 (D.N.J. 2010) (stating that a plaintiff must show why "prior incidents deserved discipline and how the misconduct in those situations was similar to the present one").

Moreover, although *Lobato* found that statistical evidence alone was sufficient to withstand summary judgment, several circuit courts have reached the opposite

---

[9] Plaintiff cites several pages of a deposition transcript taken in the *Lobato* case of Mr. Alvin LaCabe, the Manager of Safety at the time.  (Doc. # 142-26.)  As the *Lobato* court found, Mr. LaCabe's deposition testimony does not constitute evidence of Denver's alleged policy not to discipline its police officers for excessive force.  Case No. 05-cv-01437 (Doc. # 266 at 20.)  Thus, Plaintiff's statistical evidence is the only evidence that supports her failure to discipline claim.

[10] In her Supplement, Plaintiff lists sixteen incidents where a Denver Police Officer allegedly used deadly force. (Doc. # 157 at 2-3.)  Plaintiff claims that no complaints were sustained against any of the officers. However, Plaintiff has presented no evidence to substantiate either that the incidents occurred or that any resulting complaints were not sustained.  As such, the shooting incidents are mere allegations and not evidence that the Court may properly consider on summary judgment.  *See supra* note 7.

conclusion. S*ee Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005) (finding that expert's conclusion of municipal policy of condoning use of excessive force based on mere number complaints was insufficient to create genuine issue of material fact regarding the existence of such policy); *Strauss v. City of Chicago*, 760 F.2d 765, 768-69 (7th Cir. 1985) (finding statistics alone insufficient to prove municipal liability); *see also Merman v. City of Camden*, 824 F. Supp. 2d 581, 591 (D.N.J. 2010) ("Isolated and without further context . . . statistical evidence alone may not justify a jury's finding that a municipal policy or custom authorizes or condones the unconstitutional acts of police officers."). Given the generalized nature of Plaintiff's statistical evidence, and the lack of evidence that more complaints should have been sustained, the Court finds that Plaintiff has not created a triable issue as to the existence of a municipal custom or policy.

Assuming *arguendo* that Plaintiff has shown genuine disputes of material fact as to the existence of such a municipal policy or custom, Plaintiff's failure to discipline claim would fail for a separate reason. To prevail on a § 1983 municipal liability claim, Plaintiff must show a causal link between the policy and constitutional deprivation. In her Response, Plaintiff asserts that she has "shown a direct causal link" without explaining how she has accomplished such a task or what evidence supports this assertion.[11] (Doc. # 142 at 72.) Such a conclusory assertion does not create a genuine dispute of material fact to defeat summary judgment on this claim.

---

[11] Based on Plaintiff's argument in a separate section of her brief, it appears that Plaintiff's theory is that Officer Campbell committed the alleged constitutional violation because he thought he could escape culpability. (Doc. # 142 at 50.) There is no evidence to support this argument. *Compare with Lobato*, Case No. 05-cv-01437, Doc. # 266 at 21-22 (the plaintiff

14

### 3. Failure to Supervise

Plaintiff third theory of municipal liability is labeled as "failure to properly supervise." However, this claim appears largely to be an offshoot of her failure to discipline claim, except that it is focused on the DPD's failure to discipline Officer Campbell specifically. For purposes of this motion, the Court assumes as true that, from 2002 through 2006, Officer Campbell received six excessive force complaints, none of which were sustained. (Doc. # 142-19.)

In some circumstances, a municipality may be held liable where the plaintiff produces evidence of prior complaints sufficient to show that the municipality and their officials ignored police misconduct. *See Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999); *see also Cordova v. Ar*agon, 569 F.3d 1183, 1194 (10th Cir. 2009) ("A failure to investigate or reprimand might also cause a future violation by sending a message to officers that such behavior is tolerated."). However, "the mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging excessive force." *Mettler*, 165 F.3d at 1205; *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) ("Indeed, the number of complaints bears no relation to their validity."). A plaintiff must also show that the municipality failed to investigate or take corrective action on any prior meritorious claim of excessive force. *See id.*; *Lewis v. Bd. of Sedgwick Ctny. Comm'rs*, 140 F. Supp. 2d 1125, 1138 (D. Kan. 2001) (holding that defendant municipality was entitled to judgment as a matter of law where the plaintiff failed to present any evidence that the municipality failed to take corrective

---

supplied evidence that the police officer had said that he knew he would not lose his job even if he shot someone wrongfully).

action on any prior meritorious complaint); *Gantos v. City of Colo. Springs Police Dep't*, No. 07-cv-00036, 2008 WL 296291, at *9 (D. Colo. Feb. 20, 2008) (unpublished) ("Absent some showing that the previous complaints had merit, and that the [police department] avoided or ignored meritorious complaints, such previous complaints do not support a municipal liability claim."); *Long v. City & Ctny. of Honolulu*, 378 F. Supp. 2d 1241, 1247 (D. Haw. 2005) (finding that "prior complaints or incidents do not establish 'deliberate indifference' regarding a failure to train or discipline.").

Although the existence of several excessive force complaints against Officer Campbell prior to the fatal shooting of Mr. Gomez raises some suspicions, Plaintiff has failed to present any evidence showing that Denver failed to take disciplinary or corrective action on any prior **meritorious** claim of excessive force against Officer Campbell. Without such evidence, Plaintiff has not established a municipal custom or policy of permitting or encouraging excessive force.[12] *See Mettler*, 165 F.3d at 1205. Thus, summary judgment is appropriate on Plaintiff's "failure to supervise" claim.

4.   Failure to Investigate

Plaintiff's final theory of municipal liability concerns Denver's alleged failure to properly investigate police shootings. In their Reply, Defendants correctly note that this theory of liability was not pled in Plaintiff's Complaint. As such, the issue is properly considered as a request to amend the complaint. *See Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 790 n.9 (10th Cir. 1998) ("Issues raised for the first time in a plaintiff's

---

[12] In this section of her brief, Plaintiff also makes a difficult to decipher argument that Denver's alleged policy or custom of failing to discipline its officers for false statements caused an excessive use of force against Mr. Gomez. As the *Lobato* court stated, "[t]he problems with this argument are manifest." Case No. 05-cv-01437, Doc. # 266 at 22-23.

response to a motion for summary judgment may be considered a request to amend the complaint, pursuant to Fed. R. Civ. P. 15."). The Court finds that such amendment would be futile.

It is unclear whether Plaintiff contends that Denver's alleged "failure to investigate" is a freestanding theory of municipal liability, or a corollary of her "failure to discipline" and "failure to supervise" claim. What is clear is that Plaintiff has not directed the Court to any case law showing that "failure to investigate" is a viable basis for municipal liability, nor has Plaintiff attempted to identify the elements of such a claim. Although Plaintiff raises legitimate questions about the thoroughness of Denver's investigation of Officer Campbell's shooting of Mr. Gomez, (Doc. # 142 at 78-79), the Court is unable to perceive how a lackluster post-shooting investigation could have caused Officer Campbell to violate Mr. Gomez's Fourth Amendment rights. *See Cordova*, 569 F.3d at 1194 ("basic principals [*sic*] of linear time prevent us from seeing how conduct that occurs **after** the alleged violation could have somehow caused that violation."). Thus, Plaintiff has not demonstrated a causal link between Denver's alleged failure to investigate and the constitutional violation.

**C.     CONSPIRACY CLAIM UNDER 42 U.S.C. § 1985**

In this claim, Plaintiff alleges that Chief Whitman and Officer Campbell conspired to violate Mr. Gomez's constitutional rights under 42 U.S.C. § 1985(3). "The essential elements of a § 1985(3) conspiracy claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).

Plaintiff's evidence of a § 1985(3) conspiracy is woefully inadequate. First, she has offered no evidence that a conspiracy existed. Plaintiff alleges that there is circumstantial evidence of a "cover up," yet Plaintiff does not cite to any evidence in the record of a "cover up" or include any facts in her statement of the facts. Plaintiff's mere speculation that a conspiracy existed is not competent evidence to show the existence of a conspiracy.

Assuming *arguendo* that Plaintiff could prove an unlawful conspiracy on the part of the individual defendants, a § 1985(3) conspiracy does not apply to all conspiratorial interferences with the rights of others, but "only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Tilton*, 6 F.3d at 686 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Plaintiff does not put forth any evidence in her statement of facts to support this element of a § 1985(3) claim. In the body of her argument, she alleges that Officer Campbell radioed in that he was involved in a foot chase with a "Hispanic male." (Doc. # 142 at 34.) Plaintiff appears to argue that the mere fact that Mr. Gomez was Hispanic and that Officer Campbell knew Mr. Gomez's race is sufficient evidence to infer a conspiracy based on racial discrimination. The Court disagrees. Plaintiff has provided no authority to support her argument, and the Court strongly suspects that none exists. Thus, summary judgment is appropriate on Plaintiff's § 1985(3) conspiracy claim.[13]

---

[13] Defendants appear to credit Plaintiff with bringing a § 1983 conspiracy claim. (Doc. # 121 at 24-25.) However, it appears to the Court that Plaintiff's conspiracy claim is brought under § 1985(3) only. (Doc. # 3 at 10) ("Third Claim for Relief Against all Defendants Under 42 U.S.C. § 1985); (Doc. # 142 at 33) (arguing that Plaintiff has met the elements of a § 1985 conspiracy claim). To the extent that Plaintiff has alleged a § 1983 conspiracy claim, such a claim fails because, as discussed, Plaintiff has not provided any evidence that a conspiracy existed. *See*

**D.   ATTORNEYS' FEES**

In her Response, Plaintiff requests that she be awarded attorneys' fees pursuant to Fed. R. Civ. P. 56(h) for having to respond to Defendants' Motion for Summary Judgment.  (Doc. # 142 at 82-83.)  Rule 56(h) provides that the Court may order a party to pay reasonable expenses, including attorneys' fees, if the Court finds "that an affidavit or declaration under this rule is submitted in bad faith or solely for delay." Although Plaintiff disagrees with the facts recited in Officer Campbell's affidavit, the Court does not find that the affidavit was submitted "in bad faith or solely for delay."  The Court agrees with Plaintiff that it was disingenuous for Defendants to present the facts stated in Officer Campbell's affidavit as "undisputed," given the major discrepancies between Officer Campbell's affidavit and Mr. Alderton's statement to the police.  Indeed, there are so many hotly disputed material facts that, arguably, summary judgment should never have been brought on Plaintiff's excessive force claim.  Nevertheless, Defendants' summary judgment motion was largely successful, and the Court will not order Defendants to pay attorneys' fees.

## IV. <u>CONCLUSION</u>

Based on the foregoing, it is ORDERED that Defendants' Motion for Summary Judgment (Doc. # 121) is GRANTED IN PART AND DENIED IN PART.

Specifically, the Court GRANTS Defendants' Motion with respect to Plaintiff's § 1983 municipal liability claim against Denver and Plaintiff's § 1985 claim against all

---

*Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010) (holding that a federal conspiracy action brought under § 1983 "requires at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective.").

Defendants. Those claims are DISMISSED WITH PREJUDICE. The Court DENIES Defendants' Motion with respect to Plaintiff's § 1983 excessive force claim against Officer Campbell.

It is FURTHER ORDERED that Defendants' Motion to Strike Plaintiff's Untimely Expert Opinions (Doc. # 172) is DENIED AS MOOT.

DATED:  August 22, 2012

BY THE COURT:

s/Christine M. Arguello
CHRISTINE M. ARGUELLO
United States District Judge